

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

ROBERT SEXAUER, JONATHAN SCHWARTZ, NATASHA LABBAN, REGENASTEM, INC., CELL INNOVATIONS PTY LTD., ALLWIN SCIENTIFIC CORPORATION and PBH HOLDINGS LLC.,

Case No 1

Plaintiffs,

-against-

INTELLICELL BIOSCIENCES, INC., STEVEN VICTOR, MD, in his capacity as Chairmen -CEO, and individually, ANNA RHODES as the Executive Vice President of Operations and individually, and LEONARD L. MAZUR as interim Chief Operating Officer and individually,

Defendants.

**VERIFIED COMPLAINT**

**JURY TRIAL DEMANDED**



**NOW COMES** Robert Sexauer, Jonathan Schwartz, Natasha Labban, Regenastem, Inc., Cell Innovations Pty Ltd., AllWin Scientific Corporation and PBH Holdings LLC., Plaintiffs in their individual rights by their attorneys, The Law Offices of Douglas R. Dollinger, Esq., P.C., & Associates, as direct claims against the defendants IntelliCell Bio Sciences, Inc., Steven Victor, MD, in his capacity as Chairmen & CEO, and individually, Anna Rhodes as the Executive Vice President of Operations and individually, and Leonard L. Mazur as interim Chief Operating Officer and individually, as and for this Complaint, upon the Plaintiffs' personal

Page1

knowledge and upon information and belief, as to all other matters asserted herein, alleging as follows:

## I.

### NATURE OF THE ACTION

Plaintiffs are proceeding in their individual capacities for injuries unique to each of them as against IntelliCell Bio Science as former employees, and franchise licensee(s) asserting direct claims for recovery of their individual damages for acts of wrongdoing including among other things claims of fraud in the sale and delivery of securities, misrepresentation in the offers of employment; fraud in the sale and purchase of franchise-licenses breach of contract, conversion breach of fiduciary duties by certain of its Board members in their capacity as officers of the **Company** and in their individual capacities.

## II.

### JURISDICTION and VENUE

1.     This Court has jurisdiction over all claims asserted herein pursuant to 28 U.S.C. § 1332(a)(2), because complete diversity exists between Plaintiffs and most defendants; where the amount in controversy exceeds $75,000.00.

2.     In the alternative, there exists federal questions of law as related to and in connection with the sale, use and delivery of securities in violation of

Section l0(b) and Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §78j(b) (the "Exchange Act"), and SEC Rule l0 b-5, 17 C.P.R.§ 240.l0b-5, promulgated there under, as well as 18 USC §§1341 and 1344 et seq.

**3.**     Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 139l(b) insofar as the defendant corporation IntelliCell is headquartered in this district at 460 Park Avenue, 17th Floor New York, New York, each of the individual defendants are doing business in the State of New York, and all or a substantial part of the events or omissions giving rise to the claims of misconduct contained herein, including the electronic publication and dissemination of false and misleading financial documents or other information relied on upon which plaintiff and others relied in the purchase of their securities, occurred substantially in this district.

## III.

### SUPPLEMENTAL JURISDICTION

**4.**     To the extent that any of the Plaintiffs claims lack an independent basis for original federal jurisdiction, this Court has supplemental jurisdiction over those claims under 28 U.S.C. § 1367 because they are so related to the claims within this Court's original jurisdiction, that they form a part of the same case or the controversy under Article III of the United States Constitution.

**IV.**

**PARTIES/STANDING**

**Plaintiffs:**

**5.** Plaintiff-Robert Sexauer is a resident of the State of Illinois and was/is a former employee of IntelliCell.

**6.** Plaintiff-Natasha Labban is a resident of the State of New York and was/is a former employee of IntelliCell.

7. Plaintiff-Jonathan Schwartz is a resident of the State of New Jersey and was/is a former employee of IntelliCell.

**8.** Allwin Scientific Corporation was and is a Colorado Corporation with offices located at 770 W. Hampden Ave. No. 250 Englewood, Colorado, 80110 and was/is a licensee-franchisee of IntelliCell.

**9.** At all times relevant herein, defendant, Regenastem, Inc., was and is a Canadian Corporation engaged in medical research maintaining its principle place of business and its executive offices located at 13 King Street West Stoney Creek, ON L8G 1G9, Canada and was/is a licensee-franchisee of IntelliCell.

**10.** At all times relevant herein, defendant, Cell Innovations Pty Ltd. was and is an Australian Limited Corporation engaged in medical research maintaining its principle place of business at 21b Bathurst Street, Liverpool NSW 2170 Sydney, Australia and was/is a licensee-franchisee of IntelliCell.

**Complaint For Direct Shareholder(s), Employee(s) and Licensee(s) Claims
Against IntelliCell Bio Science, Steven Victor, Anna Rhodes and Leonard Mazur**

**11.** At all times relevant herein, defendant, PBH Holdings LLC., was and is a Texas Corporation with offices located at 4315 Magnolia Lane Sugarland, Texas and was/is a licensee-franchisee of IntelliCell.

**Defendants:**

**12.** At all times relevant herein, defendant, IntelliCell Bio Sciences Inc., ("IntelliCell" or **"Company")** was and is a Nevada Corporation engaged in medical research offering medical technology based franchises and maintaining its principle place of business in the State of New York, having its executive offices located at 460 Park Avenue, 17th Floor New York, New York.

**13.** Upon information and belief, defendant **Steven Victor, MD,** ("Victor") **is** domiciled and residing in the State of New York, and a doctor of medicine duly licensed to practice medicine or is otherwise conduct medical research in the State of New York.

**14.** At all times relevant herein, defendant **Victor** is or was the Chairman of the Board of Directors and Chief Executive Officer ("CEO") of the IntelliCell.

**15.** Upon information and belief, defendant **Anna Rhodes** ("**Rhodes**") is domiciled and residing in the State of New York.

**17.** At all times relevant herein, defendant **Rhodes** was the Executive Vice President of Operations of IntelliCell.

**18.** Upon information and belief, defendant **Leonard L. Mazur** (**"Mazur"**) is domiciled and residing in the State of New York.

**19.** Upon information and belief, defendant **Mazur** was and is the interim Chief Operating Officer of IntelliCell.

## V.
## FACTS[1]

**20.** IntelliCell is a publically traded OTC Nevada Corporation trading on the NASDAQ under the ticker symbol "SVFC".

**21.** The **Company** is subject to the Securities Exchange Act of 1934, 15 U.S.C. falling under the rules-regulation of the Securities and Exchange Commission ["SEC"] when issuing information statements concerning significant events, statements of material change and financial performance statements in relation to the sale and purchase and of its securities.

**22.** The **Company's** information statements must be accurate and attested to by its officers, filed with the SEC and available for public inspection.

**23.** Since commencing in or about July 2011 and continuing to date, the **Company's** information statements were attested to for their accuracy by **Victor,** and were filed with the SEC whereby they were available for public inspection.

---

[1] All of the claims are asserted for the period commencing at least November 1, 2010, by operation of assignment of the right to the SVFSCR Process and continuing to the present (the "Relevant Period").

**Complaint For Direct Shareholder(s), Employee(s) and Licensee(s) Claims**
**Against IntelliCell Bio Science, Steven Victor, Anna Rhodes and Leonard Mazur**

**24.**    Since commencing in or about July 2011 and continuing to date the **Company** has issued and continues to issue its securities in consideration for direct payment in the purchase of said securities and also in matters where securities are issued in consideration of employee services and in the sale-purchase of franchise-licenses.

**25.**    Since commencing in or about July 2011 and continuing to date the **Company** has issued Plaintiffs its shares-securities in consideration for direct payment of employee services and the sale-purchase of franchise licenses.

**26.**    Upon information and belief, the company has not filed a proper franchise registration statement in New York or any other jurisdiction.

## VI.
## FRANCHISE-LICENSEES

**27.**    Since commencing in or about July 2011 and continuing to date IntelliCell's primary business is focused and dedicated to technology development in the expanding regenerative medical markets and licensing its technology to franchise-licensees for a fee and revenue sharing.

**28.**    In support of its technology delivery IntelliCell sought individuals for employment with experience in areas dedicated to the service needs, and quality assurance in the sale and delivery of franchises-licenses associated with regenerative medicine.

**Complaint For Direct Shareholder(s), Employee(s) and Licensee(s) Claims**
**Against IntelliCell Bio Science, Steven Victor, Anna Rhodes and Leonard Mazur**

**29.** Since commencing in or about July 2011 and continuing to date, Defendant IntelliCell has sold its technology as a claimed newly discovered process using adipose stromal vascular fraction stem cell rejuvenation [from time-to-time "SVFSCR Process" or "Process"]through it franchise business under a "Laboratory Services License Agreement" ["Franchise Agreement", "Agreement" or "Franchise-License"].

**30.** The **Company** issued "marketing materials" and publically released statements conforming and supporting the statements that the SVFSCR Process was developed by Dr. Steven Victor, patented and filed with United States Patent and Trade Office ["USPTO"] with an assignment to the **Company** from at least July 2011, wherein the **Company** reported the USPTO filing and assignment in its SEC filings.

**31.** Upon learning of the filing and assignment, commencing as early as September 2011, Plaintiffs Regenastem, Inc., Cell, Innovations Pty Ltd., Allwin Scientific Corporation and PBH Holdings LLC., [collectively "Plaintiff(s)-Licensee(s)"] each independently began to explore opportunities to purchase a franchise licenses from IntelliCell reviewing the **Company's** marketing materials, SEC filings and making inquiries wherein each were responded to by Defendant **Victor.**

**32.** In connection with the inquires and claimed opportunity to purchase licenses and so as to induce Plaintiffs into the purchase of said licenses

the **Company** via **Victor** told Plaintiffs-Licensee Regenastem, Inc., by Jasen Kane; told Plaintiff-Licensee Cell, Innovations Pty   Ltd., by Wayne Thomas; told Plaintiff-Licensee Allwin Scientific Corporation by William Hess; and told Plaintiff-Licensee PBH Holdings LLC., by Patrica Dixon that he had invented-developed a process which provided a 97% live cell recovery using  his patented SVFSCR Processing of adipose stromal vascular fraction stem cell rejuvenation in human begins; that the process was compliant and covered under section 361 of the Public Health Service Act (PHS Act) [42 §U.S.C. 264]; that **Victor** was working with the Food and Drug Administration ["FDA"], where the FDA had determined the process was exempt from the requirements of 21 CFR 1271.l0(a)( l).

**33.**    In connection with the claimed opportunity to purchase franchise licenses, and so as to induce Plaintiffs into the purchase of said franchise licenses, the **Company** via **Victor**, **Rhodes** and **Mazur** provide Plaintiffs-Licensees with their marketing material including but not limited to laboratory reports, testing data, copies of patent application(s) and an issued patent for the SVFSCR Process with claimed financial projections, terms of fee splitting and performance-trading of IntelliCell's issued stock.

**34.**    Commencing in or about July 2011 and thereafter the **Company** by **Victor**, **Rhodes** and **Mazur** sent Plaintiffs-Licensees numerous e-mail

messages containing internet links to marketing materials and photographic exhibits prepared by or for the **Company.**

35.    These materials contained representations relating to acquisition of and the planned operations under the Franchise Agreement, including the medical credentialing process for physicians operating the franchised centers, contracting assistance with medical insurance companies for payments of claims for SVFSCR Process services to be provided to the franchisees clients; for the purchase of laboratory equipment from the **Company's** vendors, and, most importantly the material statements which contained the claim that the SVFSCR Process as patented and filed with the USPTO provide a 97% live cell recovery for redelivery to patients, the Process was FDA compliant with claims assuring the Plaintiffs-Licensees that they would have on going information, guidance and assistance to manage, and other and operate the business so that franchisees would acquire a turn-key operation.

**AllWin's Franchise-License Agreement:**

36.    At a time prior to June 14, 2011, William Hess on behalf of AllWin reviewed the franchise business plan-Agreement available to franchisees as provided to him by the **Company** and further reviewed the **Company's** SEC & USTPO filings via the Internet.

**37.** Mr. Hess's findings were consistent with the financial information disclosed and the business model presented in the Agreement as well as the technology claimed in the **Company's** SEC & USPTO filings.

**38.** The express statements published by the **Company** and as supported in its SEC & USPTO filings included statements that **Dr. Victor** had invented-discovered a process which provided a 97% live stem cell recovery using his patented SVFSCR Processing of adipose stromal vascular fraction stem cell rejuvenation in human begins; allowing for the processing and redelivery of the live stem cells in human begins; that the process was compliant and covered under section 361 of the Public Health Service Act (PHS Act) [42 §U.S.C. 264]; that **Victor** was working with the Food and Drug Administration ["FDA"], where the FDA had determined the process was exempt from the requirements of 21 CFR 1271.l0(a)( l); the promised delivery of substantial and on-going expert support in the operations of the franchise center including (but not limited to) providing equipment for onsite SVFSCR processing, the fee splitting terms and performance-trading of IntelliCell's issued stock

**39.** In reliance upon the statements and representations made above and in all of the associated marketing materials, filings reviewed and/or communicated to AllWin by **Victor**, on June 14, 2011 AllWin agreed to enter into a Franchise Agreement with the **Company** which granted AllWin a five

year license to the SVFSCR Process allowing AllWin to provide tissue processing services within a 25 mile radius of Denver, Colorado.

**40.** In consideration for the Franchise Agreement AllWin agreed to pay and paid the **Company** (i) a license fee of $80,000.00 and (ii) and agreed to pay an ongoing fee equal to $500.00 for each tissue processing case.

**41.** On or about June 14, 2011 AllWin signed the Franchise Agreement with the **Company** for the development of a franchise location at 770 W. Hampden Ave. No. 250 Englewood, Colorado, 80110. The **Company** via **Victor** countersigned the Agreement on or about June 14, 2011.

**42.** After execution of the Agreement and in preparation and anticipation of opening its franchise center and IntelliCell support service AllWin paid franchise license fees, office rent, office improvements (lab-build out) postage/shipping, travel, supplies phone/communication, insurance, legal/accounting/marketing fees, and other recoverable expenses.

**43.** The Agreement provided for termination by either party in the event of a material default of any duty, obligation or responsibility imposed by the Agreement which has not been cured within ten business days after the non-defaulting party gave written notice to the defaulting party of such default.

**44.** Notwithstanding the promised delivery of its services-technology to AllWin, although demanded by AllWin IntelliCell has refused and otherwise improperly withheld delivery of said services-technology and support.

**45.** That in or about April 2012, based on communication-warnings issued by the FDA in or about November 2011, and again in March April 2012, AllWin discovered that the statements made by the **Victor** on behalf of the **Company** were false and misleading including the statements that he had invented-discovered a process which provided a 97% live cell recovery using his patented SVFSCR Processing of adipose stromal vascular fraction stem cell rejuvenation for redelivery in human begins; that the process was compliant and covered under section 361 of the Public Health Service Act (PHS Act) [42 §U.S.C. 264]; that **Victor** was working with the Food and Drug Administration ["FDA"], where the FDA had determined the process was exempt from the requirements of 21 CFR 1271.l0(a)( l).

**46.** At all times during the relevant period in response to the discovery of the false-misleading information and after June 2012, AllWin provided written notice to the **Company** advising IntelliCell of material defaults in the **Company's** Franchise Agreement with them.

**PBH's Franchise-License Agreement:**

47.     At a time prior to June 27, 2011, Patricia Dixon on behalf of PBH reviewed the franchise business plan-Agreement available to franchisees as provided to her by the **Company** and further reviewed the **Company's** SEC & USTPO filings via the Internet.

48.     Ms. Dixon's findings were consistent with the financial information disclosed and the business model presented in the Agreement as well as the technology as claimed in the **Company's** SEC & USPTO filings.

49.     The express statements published by the **Company** and as supported in its SEC & USPTO filings included statements that **Dr. Victor** had invented-discovered a process which provided a 97% live stem cell recovery using his patented SVFSCR Processing of adipose stromal vascular fraction stem cell rejuvenation in human begins; allowing for the processing and redelivery of the live stem cells in human begins; that the process was compliant and covered under section 361 of the Public Health Service Act (PHS Act) [42 §U.S.C. 264]; that **Victor** was working with the Food and Drug Administration ["FDA"], where the FDA had determined the process was exempt from the requirements of 21 CFR 1271.l0(a)( l); the promised delivery of substantial and on-going expert support in the operations of the franchise center including (but not limited to) providing equipment for

onsite SVFSCR processing,  the fee splitting terms and performance-trading of IntelliCell's issued stock

**50.**     In reliance upon the statements and representations made above and in all of the associated marketing materials, filings reviewed and/or communicated to PBH by **Victor**, on June 27, 2011 PBH agreed to enter into a Franchise Agreement with the **Company** which granted PBH a five year license to the SVFSCR Process allowing PBH to provide tissue processing services within a 25 mile radius of Sugarland, Texas.

**51.**     In consideration for the Franchise Agreement PBH agreed to pay and paid the **Company** (i) a license fee of $60,000.00 and (ii) and agreed to pay an ongoing fee equal to $500.00 for each tissue processing case.

**52.**     On or about June 27, 2011 PBH signed the Franchise Agreement with the **Company** for the development of a franchise location at 4315 Magnolia Lane Sugarland, Texas. The **Company** via **Victor** countersigned the Agreement on or about June 27, 2011.

**53.**     After execution of the Agreement and in preparation and anticipation of opening its franchise center and IntelliCell support service PBH paid franchise license fees, office rent, office improvements (lab-build

out) postage/shipping, travel, supplies phone/communication, insurance, legal/accounting/marketing fees, and other recoverable expenses .

**54.** The Agreement provided for termination by either party in the event of a material default of any duty, obligation or responsibility imposed by the Agreement which has not been cured within ten business days after the non-defaulting party gave written notice to the defaulting party of such default.

**55.** Notwithstanding the promised delivery of its services-technology to **PBH**, although demanded by PBH IntelliCell has refused and otherwise improperly withheld delivery of said services-technology and support.

**56.** That in or about April 2012, based on communication-warnings issued by the FDA in or about November 2011, and again in March April 2012, PBH discovered that the statements made by the **Victor** on behalf of the **Company** were false and misleading including the statements that he had invented-discovered a process which provided a 97% live cell recovery using his patented SVFSCR Processing of adipose stromal vascular fraction stem cell rejuvenation for redelivery in human begins; that the process was compliant and covered under section 361 of the Public Health Service Act (PHS Act) [42 §U.S.C. 264]; that **Victor** was working with the Food and Drug Administration ["FDA"], where the FDA had determined the process was exempt from the requirements of 21 CFR 1271.l0(a)( l).

**57.** At all times during the relevant period in response to the discovery of the false-misleading information and after June 2012, PBH provided written notice to the **Company** advising IntelliCell of material defaults in the **Company's** Franchise Agreement with them.

**Regenastem's Franchise-License Agreement:**

**58.** At all times prior to December 15, 2011, Jason Kane on behalf of Regenastem reviewed the franchise business plan-Agreement available to franchisees as provided to him by the **Company** and further reviewed the **Company's** SEC & USPTO filings via the Internet.

**59.** Mr. Kane's findings were consistent with the financial information disclosed and the business model presented in the Agreement as well as the technology as claimed in the SEC & USPTO filings.

**60.** The express statements published by the **Company** and as supported in its SEC & USPTO filings included statements that Dr. Victor had invented-developed a process which provided a 97% live stem cell recovery using his patented SVFSCR Processing of adipose stromal vascular fraction stem cell rejuvenation in human begins; allowing for the processing and redelivery of the live stem cells in human begins; that the process was compliant and covered under section 361 of the Public Health Service Act (PHS

Act) [42 §U.S.C. 264]; that Victor was working with the Food and Drug Administration ["FDA"], where the FDA had determined the process was exempt from the requirements of 21 CFR 1271.l0(a)( l); the promised delivery of substantial and on-going expert support in the operations of the franchise center including (but not limited to) providing equipment for onsite SVFSCR processing, the fee splitting terms and performance-trading of IntelliCell's issued stock

**61.** In reliance of the statements and representations made above and in all of the associated marketing materials, filings reviewed and/or communicated Regenastem by Dr. Victor as well as the promise delivery of IntelliCell transferable shares, on December 15, 2011 Regenastem agreed to enter into a Franchise Agreement with the **Company** which granted Cell-Innovations a ten years license to the SVFSCR Process; allowing Regenastem to provide tissue processing services within territorial borders of Canada.

**62.** In consideration of the Franchise Agreement and delivery of IntelliCell's shares, Regenstem agreed to pay and paid the **Company** (i) a license fee of $500,000.00 and (ii) agreed to pay an ongoing fee equal to $1,000.00 for each tissue processing case.

**63.** On or about December 15, 2011 Regenastem signed the Franchise Agreement with the **Company** for the development of a franchise location 13

King Street West Stoney Creek, ON L8G 1G9, Canada. The **Company** via Victor countersigned the Agreement on or about December 17, 2011.

**64.** After execution of the Agreement and in preparation and anticipation of opening its franchise center and IntelliCell support service Regenastem paid franchise license fees, office rent, office improvements (lab-build out) postage/shipping, travel, supplies phone/communication, insurance, legal/accounting/marketing fees, and other recoverable expenses.

**65.** The Agreement provided for termination by either party in the event of a material default of any duty, obligation or responsibility imposed by the Agreement which has not been cured within ten business days after the non-defaulting party gave written notice to the defaulting party of such default.

**66.** Notwithstanding the promised delivery of its technology and services and of its IntelliCell securities as payment to Regenastem wherein Regenastem was promised transfer rights, although demanded by Regenastem IntelliCell has refused and otherwise improperly withheld delivery of said technology the associated services and of its securities.

**67.** That in or about April 2012, based on communication-warnings issued by the FDA in or about November 2011, and again in April 2012, Regenastem discovered that the statements made by the Victor on behalf of the

**Company** were false and misleading including the statements that he had invented-discovered a process which provided a 97% live cell recovery using his patented SVFSCR Processing of adipose stromal vascular fraction stem cell rejuvenation for redelivery in human begins; that the process was compliant and covered under section 361 of the Public Health Service Act (PHS Act) [42 §U.S.C. 264]; that Victor was working with the Food and Drug Administration ["FDA"], where the FDA had determined the process was exempt from the requirements of 21 CFR 1271.l0(a)( l).

**68.**    At all times during the relevant period in response to the discovery of the false-misleading information and after June 2012, Regenastem provided written notice to the **Company** advising IntelliCell of material defaults in the **Company's** Franchise Agreement with them.

**Cell-Innovation's Franchise-License Agreement:**

**69.**    At all times prior to December 17, 2011, Wayne Thomas on behalf of Cell-Innovations reviewed the franchise business plan-Agreement available to franchisees as provided to him by the **Company** and further reviewed the **Company's** SEC & USPTO filings via the Internet.

**70.**    Mr. Wayne's findings were consistent with the financial information disclosed and the business model presented in the Agreement as well as the technology as claimed in the SEC & USPTO filings.

**71.**    The express statements published by the **Company** and as supported in its SEC & USPTO filings included statements that **Dr. Victor** had invented-discovered a process which provided a 97% live stem cell recovery using his patented SVFSCR Processing of adipose stromal vascular fraction stem cell rejuvenation in human begins; allowing for the processing and redelivery of the live stem cells in human begins; that the process was compliant and covered under section 361 of the Public Health Service Act (PHS Act) [42 §U.S.C. 264]; that **Victor** was working with the Food and Drug Administration ["FDA"], where the FDA had determined the process was exempt from the requirements of 21 CFR 1271.l0(a)( 1); the promised delivery of substantial and on-going expert support in the operations of the franchise center including (but not limited to) providing equipment for onsite SVFSCR processing, the fee splitting terms and performance-trading of IntelliCell's issued stock

**72.**    In reliance of the statements and representations made above and in all of the associated marketing materials, filings reviewed and/or communicated to Cell-Innovations by **Dr. Victor** as well as the promise delivery of IntelliCell

transferable shares, on December 17, 2011 Cell-Innovations agreed to enter into a Franchise Agreement with the **Company** which granted Cell-Innovations a ten years license to the SVFSCR Process; allowing Cell-Innovations to provide tissue processing services within territorial borders of Australia & New Zealand.

**73.** In consideration of the Franchise Agreement and delivery of IntelliCell's shares, Cell-Innovations agreed to pay and paid the **Company** (i) a license fee of $700,000.00 and (ii) agreed to pay an ongoing fee equal to $12.5% net for each tissue processing case.

**74.** On or about December 17, 2011 Cell-Innovations signed the Franchise Agreement with the **Company** for the development of a franchise location at 21b Bathurst Street, Liverpool NSW 2170 Sydney, Australia. The **Company** via **Victor** countersigned the Agreement on or about December 17, 2011.

**75.** After execution of the Agreement and in preparation and anticipation of opening its franchise center and IntelliCell support service Cell-Innovations paid franchise license fees, office rent, office improvements (lab-build out)  postage/shipping, travel, supplies  phone/communication, insurance, legal/accounting/marketing fees, and other recoverable expenses .

**76.** The Agreement provided for termination by either party in the event of a material default of any duty, obligation or responsibility imposed by the Agreement which has not been cured within ten business days after the non-defaulting party gave written notice to the defaulting party of such default.

**77.** Notwithstanding the promised delivery of its technology and services and of its IntelliCell securities as payment to Cell-Innovations wherein Cell-Innovations was promised transfer rights, although demanded by Cell-Innovations IntelliCell has refused and otherwise improperly withheld delivery of said technology the associated services and of its securities.

**78.** That in or about April 2012, based on communication-warnings issued by the FDA in or about November 2011, and again in March April 2012, Cell-Innovations discovered that the statements made by the **Victor** on behalf of the **Company** were false and misleading including the statements that he had invented-discovered a process which provided a 97% live cell recovery using his patented SVFSCR Processing of adipose stromal vascular fraction stem cell rejuvenation for redelivery in human begins; that the process was compliant and covered under section 361 of the Public Health Service Act (PHS Act) [42 §U.S.C. 264]; that **Victor** was working with the Food and Drug Administration ["FDA"], where the FDA had determined the process was exempt from the requirements of 21 CFR 1271.l0(a)( l).

**79.**    At all times during the relevant period in response to the discovery

of the false-misleading information and after May 2012, Cell-Innovations

provided written notice to the **Company** advising IntelliCell of material

defaults in the **Company's** Franchise Agreement with them.

## VII.
## INTELLICELL'S FAILURE TO PAY AND CONVERSION
## OF EMPLOYEES' WAGES-BREACH OF CONTRACT

**80.**    At all times during the Relevant Period the **Company** employed

certain individuals as support personnel in the development of its Franchisee-

Licensee operations including Sarah R. Young as a Lab Director and Quality

Assurance Officer; Natasha Labban as a medical assistant and consultant;

Jonathan Schwartz, as Vice President of Sales and Marketing; and Robert

Sexauer, as Executive Vice President of Clinical Studies.

### Robert Sexuaer:

**81.**    At all relevant times effective February 2012 Plaintiff Sexauer was

offered a written employment agreement ("Employment Agreement") with the

**Company** to assume the position as Executive Vice President Clinical

Development.

**82.**    The Employment Agreement expressly provided and Sexauer was

promised an annual salary of $275,000.00; together with other compensation

including an annual bonus of 50% calculated on his base salary and performance; payment for relocation allowance in the sum $50,000.00; a signing incentive in the form of 250,000 transferable IntelliCell shares and purchase options of an additional 100,000.00 IntelliCell shares over a three (3) year period.

**83.**    At all relevant times effective February 2012 Plaintiff Sexauer agreed to the terms offered by the **Company** and executed the Employment Agreement which was countersigned by the **Company** whereupon he assumed the position as Executive Vice President Clinical Development under the terms as set forth in the Employment Agreement.

**84.**    At all relevant times Plaintiff Sexauer in the performance of his services was responsible to oversee the articles and other publications of information related to the SVFSCR Process coordinating in house laboratory testing and clinical studies with franchisees-licensees and third-party biologist.

**85.**    At all relevant times Plaintiff Sexauer authorized the Company to deduct both federal and state taxes including payroll taxes, social security taxes, New York State Unemployment Tax.  Likewise, he authorized deductions for employee contributions to the Company's 401K benefits plan.

**86.**    Shortly after commencing his employment with IntelliCell the **Company** advised Plaintiff Sexauer that it was going to be late with payment to

him as provided for under the terms of his Employment Agreement for the reason that it was waiting distribution-infusion of investors' funds and requested that he continue his employment with the **Company** wherein the **Company would** make payment to him upon being funding.

**87.**    At all relevant times Plaintiff Sexauer agreed to allow the accumulation of his salary pending receipt of investors' funds.

**88.**    At all relevant times on or about April 7, 2013, Plaintiff Sexauer received memo from **Dr. Victor** directing him to publish information realted to the success and effects of SVFSCR Process using laboratory and clinical data establishing a 97% live cell recovery for redelivery to IntelliCell patients.

**89.**    At times prior to April 7, 2013, Plaintiff Sexauer received notice from intelliCell employees, Franchisees-Licensees Regenastem, Inc., by Jasen Kane, Cell Innovations Pty Ltd., by Wayne Thomas and third-party Rutgers University professors of biology advising IntelliCell that the claims of **Dr. Victor,** including the statements that the SVFSCR Process provided a 97% live cell recovery for redelivery to patients using his patented SVFSCR Processing of adipose stromal vascular fraction stem cell rejuvenation in human begins was false and scientifically untrue.

**90.**    At times prior to April 7, 2013, Plaintiff Sexauer received notice and was aware of the FDA warnings presnted to IntelliCell and **Dr. Victor** advsing

them not to promote the SVFSCR Process as FDA approved and directing the **Company** to retract its claims.

91. In response to the April 7, 2013 memo Sexauer advised **Dr. Victor** that it would be improper to publish such an article based on the findings made by Regenastem and Cell Innovations as well as the findings by third-party Rutgers University professors of biology where in each instance they advised IntelliCell and Dr. Victor that his claims of a 97% revocery of live cells was not supported by third-party laboratory testing or clinical data and that he would not publish an article reproting otherwise without independent verification of the claim laboratory test and clinical data.

92. Likewsie, Plaintiff Sexauer advised **Dr. Victor** that it would be improper-fraudulent to publish such an article based on the FDA warnings and refused to have the publications released.

93. Shortly after Plaintiff Sexauer refused to allow the publication of the false materials as demanded by **Dr. Victor** the **Company** in retaliation terminated Plaintiff Sexauer from his position.

94. At all times during the Relevant Period Plaintiff Sexauer has demanded payment of his accrued wages and the **Company** has refused to meet its contractual obligations-terms as promised to Sexauer under his Employment Agreement with the **Company** wherein for the period commencing 2012 and

continuing to the present the **Company** has refused and otherwise failed to make monetary payments of an amount in excess of $ 436,457.00.

**95.** At all relevant times the **Company** failed to deliver it transferable shares as promised to Plaintiff Sexauer.

**Natasha Labban:**

**96.** At all relevant times effective October 2009 Plaintiff Labban was offered employment with the **Company** to assume the position as a medical assistant and consultant.

**97.** The terms of employment expressly provided and Labban was promised an annual salary of approximately $42,000; together with other compensation including sick-time, accumulated vacation, and employment incentive in the form of transferable IntelliCell shares.

**98.** At all relevant times effective October 2009 Plaintiff Labban accepted the offered employment with the **Company** and assume the position as a medical assistant and consultant.

**99.** At all relevant times Plaintiff Labban auhtroized the **Company** to deduct both federal and state taxes including payroll taxes, social security taxes, New York State Unemployment Tax. Likewise, she authorized deductions for employee contributions to the **Company's** 401k benefits plan.

**100.** At all relevant times Plaintiff Labban in the performance of her services was requirees to advance expenses in the perfoamnce of her services to the **Company** wherein Plaintiff Labban extended the sum of $2,494.59.

**101.** In or about June 2102 Labban was terminated for the **Company's** inability to make payroll.

**102.** At all times during the Relevant Period the Labbon has demanded payment of her wages and the **Company** has refused to meet its contractual obligations-terms as promised to Labban under her employment agreement with the **Company** wherein for the period commencing 2012 and continuing to May to the present the **Company** has refused and otherwise failed to make monetary payments of an amount in excess of $ 16,693.09.

**103.** At all relevant times the Company failed to deliver it transferable shares as promised to Plaintiff Labban.

**Johathan Schwartz:**

**104.** At all times during the Relevant Period, Schwartz was an employee of IntelliCell wherein IntellCell wrongly terminated his employment and thereafter entered into a settlement agreement with him in or about 2013.

**105.** The settlement agreement called for cash in the sum of $53,000.00 and 200,000 transferable IntelliCell shares and an additional 100,000 options.

**106.**   At all times during the Relevant Period, Schwartz has demanded payment of his cash and transferable IntelliCell shares, IntelliCell has refused to make payment or delivery of transferable IntelliCell shares to him.

## VIII.

### INTELLICELL'S CONVERSION OF FIDUCIARY TAX WITHHOLDINGS, CONVERSION OF EMPLOYEES' WAGE CONTRIBUTIONS AND FALSE FILINGS WITH BOTH FEDERAL AND STATE TAXING AUTHORITIES

**107.**   At all times during the Relevant Period IntelliCell by **Victor, Rhodes** and **Mazur** were charged with the fiduciary duties to accurately make employee wage payments, administer and properly deduct both federal and state patrol taxes including but not limited to social security taxes and New York State Unemployment tax.  Likewise, was their duty to protect-administer employee contributions to the **Company's** 401k benefits plan.

**108.**   At all times during the Relevant Period Young, Labban, Schwartz and Sexauer were salaried employees under contract with IntelliCell and had executed W-2s, W-4s or other documents necessary for reporting if wages and their associated tax liabilities.  Likewise, they executed all of the necessary documents for payments and participation in the **Company's** 401k benefits plan.

**109.**   At all times during the Relevant Period the **Company** via **Victor, Rhodes** and **Mazur's** was required to accurately report wages and withholdings

making the employees deductions-payments as fiduciaries into state and federal tax treasuries as well as into the account(s) of the 401k benefit plan manager.

**110.** At all times during the Relevant Period, at the direction of **Victor, Rhodes** with the assistance of **Mazur** said defendants collected/withheld said payments but intentionally, recklessly and/or negligently misidentified wages by falsely filing 1099's or other documents in the names Young, Labban, Schwartz and Sexauer wherein the **Company** issued Young, Labban, Schwartz and Sexauer employee payroll checks while it withheld the full portions of taxes due on the wages earned but intentionally, recklessly or negligently under paid into both the state and federal treasuries the actual amounts deducted and as required illegally keeping the money for the operations of IntelliCell or directly for their own personal use.

**111.** At all times during the Relevant Period Young, Labban, Schwartz and Sexauer have been unable to accurately report their income or otherwise receive full credit for their deductions including amounts which were deducted for social security taxes, unemployment benefits and 401k benefits.

## COUNT I.

### DAMAGES AND RESCISSION FOR VIOLATIONS OF NEW YORK'S FRANCHISE REGISTRATION AND DISCLOSURE UNDER GENERAL BUSINESS LAW
### (Against IntelliCell)

**112.** Plaintiffs Regenastem, Inc., Cell Innovations Pty Ltd., Allwin Scientific Corporation and PBH Holdings LLC., repeat and incorporate by reference the allegations in Paragraphs "**1**" through "**111**" above as if fully set forth here-again.

**113.** At all times during the Relevant Period, the **Company** and its Board were required to file with the State of New York and other jurisdictions its disclosure statements where it sold its franchise-licenses concerning the SVFSCR Processes and services, physician and patient protocols and its status as a drug or non-drug where the usage and terms are of stem cell recovery and defined under section 361 of the Public Health Service Act (PHS Act) [42 §U.S.C. 264] and 21 CFR 1271.l0(a)( l) and marketed under the trade name as IntelliCell's SVFSCR Process.

**114.** In connection with the sale of IntelliCell franchise-licenses to Plaintiffs, Regenastem, Inc., Cell Innovations Pty Ltd., Allwin Scientific Corporation and PBH Holdings LLC, by the defendants **Victor, Rhodes** and **Mazur,** each of them, made multiple untrue statements of material facts; and/or omitted to state material facts in the Company's publications-filings necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading. This conduct was in violation of the franchise registration and disclosure requirements under New York General Business Law Art 33 as defined in § 681 et seq.

**115.** The untrue statements of material fact and omissions of material fact were made by defendants IntelliCell, **Victor, Rhodes** and **Mazur** during

the period September 2011, in and continuing until June 2012 through the various marketing and promotional materials selling the franchise-licensees where the information and materials communicated to Plaintiffs Regenastem, Inc., Cell Innovations   Pty   Ltd.,   Allwin   Scientific Corporation and PBH Holdings LLC during the this period were communicated through telephone conversations,   emails   and   other   written,   electronic   and   verbal communications.

**116.** IntelliCell, **Victor, Rhodes** and **Mazur,** knew, or in the exercise of reasonable care should have known, of the untrue statements of material fact and omissions of material fact.

**117.** Plaintiffs Regenastem,   Inc.,   Cell Innovations   Pty   Ltd., Allwin   Scientific Corporation and PBH Holdings LLC did not know, and in the exercise of reasonable care could not have known, of the untruths and omissions.

**118.** By reason of the foregoing, as a direct and proximate result of defendants' wrongful conduct, Plaintiffs Regenastem, Inc., Cell Innovations Pty Ltd., Allwin   Scientific Corporation and PBH Holdings LLC were induced to purchase the franchise-license offered by IntelliCell and suffered financial loss in an amount to be proven at trial but in a sum no less than $75,000.00 each.

**119.** Pursuant to New York Business Law defendants are civilly liable to plaintiffs Regenastem, Inc., Cell Innovations Pty Ltd., Allwin Scientific Corporation and PBH Holdings LLC, for the damages sustained as a result of the grant of the franchise-license.

**120.** Pursuant to New York Business Law the Court may order IntelliCell to rescind the franchise-license and make restitution to Plaintiffs Regenastem, Inc., Cell Innovations Pty Ltd., Allwin Scientific Corporation and PBH Holdings LLC.

**121.** By reason off the foregoing IntelliCell is liable for the damages heretofore claimed and to be proven at trial in an amount to be proven at trial but in an amount no less than $75,000.00.

**122.** By reason off the foregoing IntelliCell is liable for punitive damages in an amount to be awarded by a jury.

**COUNT II.**

**FRAUD**
**(Against All Defendants)**

**123.** Plaintiffs Regenastem, Inc., Cell Innovations Pty Ltd., Allwin Scientific Corporation and PBH Holdings LLC., repeat and incorporate by reference the allegations in Paragraphs **"1"** through **"122"** above as if fully set forth.

**Complaint For Direct Shareholder(s), Employee(s) and Licensee(s) Claims**
**Against IntelliCell Bio Science, Steven Victor, Anna Rhodes and Leonard Mazur**

**124.** During the period September 2011, in and through the June 2012, through the various marketing and promotional materials selling the franchise-licensees where the information and materials communicated to Plaintiffs Regenastem, Inc., Cell Innovations Pty Ltd., Allwin   Scientific Corporation and PBH Holdings LLC during the this period were communicated through telephone conversations, emails and other written, electronic and verbal communications.

**125.** Defendants, and each of them, made or caused to be made multiple false representations and material omissions to the Plaintiffs Regenastem,   Inc.,   Cell Innovations Pty Ltd., Allwin   Scientific Corporation and PBH Holdings LLC., relating to their purchase of a IntelliCell franchise-license, as alleged heretofore.

**126.** The falsity of such statements and omissions was either known to the defendants or they were made with reckless indifference as to their truth;

**127.** The misrepresentations and omissions were made for the purpose of defrauding these plaintiffs by inducing them to purchase an IntelliCell franchise-license; Plaintiffs Regenastem,   Inc.,   Cell Innovations   Pty   Ltd.,   Allwin Scientific Corporation and PBH Holdings LLC., relied on the misrepresentations and omissions, and had the right to rely on them.

**128.** By reason of the foregoing plaintiffs Regenastem,   Inc.,   Cell Innovations Pty Ltd., Allwin   Scientific Corporation and PBH Holdings LLC.,

suffered compensable injury resulting from the misrepresentations and omissions, in that they were induced to purchase IntelliCell's franchise-license and make substantial investments to organize and operate their businesses.

**129.** During the period September 2011 and though June 2012, Defendants:

(a)    made or caused to be made multiple false representations and material omissions to the plaintiffs relating to the certification of their franchise-licenses and its financial performance as alleged herein;

(b)    the falsity of such statements and omissions was either known to Defendants or they were made with reckless indifference as to their truth;

(c)    the misrepresentations and omissions were made for the purpose of defrauding these Plaintiffs by continuing to conceal from them the near-certainty that the franchise would not perform as represented; September 2011, in and through the June 2012, through the various marketing and promotional materials selling the franchise-licensees where the information and materials communicated to Plaintiffs Regenastem,   Inc., Cell Innovations   Pty   Ltd., Allwin    Scientific Corporation and PBH Holdings LLC during the this period were communicated through telephone conversations, emails and other written, electronic and verbal communications, so that Plaintiffs would move forward with the development of the franchise, continue to invest substantial additional

funds and falsely believe that they would open the franchise under the terms provided;

(d)     plaintiffs relied on the misrepresentations and omissions, and had the right to rely on them; and

(e)     the plaintiffs suffered compensable injury resulting from the misrepresentations and omissions.

**130.**   The conduct of the defendants as alleged herein was accomplished with actual malice, in that it was the product of conscious and deliberate wrongdoing, the knowing and intentional misrepresentation and concealment of material information, wrongful motive, intent to injure, and fraud.

**131.**   By reason off the foregoing IntelliCell is liable for the damages heretofore claimed and to be proven at trial in an amount to be proven at trial but in an amount no less than $75,000.00.

**132.**   By reason off the foregoing IntelliCell is liable for punitive damages in an amount to be awarded by a jury.

### COUNT III.

#### NEGLIGENT MISREPRESENTATION
#### (Against All Defendants)

**133.**   Plaintiffs Regenastem, Inc., Cell Innovations Pty Ltd., Allwin Scientific Corporation and PBH Holdings LLC., repeat and incorporate by

reference the allegations in Paragraphs **"1"** through **"132"** above as if fully set forth above.

**134.** Defendants owed a duty of care to the plaintiffs to provide them with full, accurate and truthful information regarding the material aspects of the franchise they were considering whether to purchase, including but not limited to initial investment requirements, working capital requirements and earnings and financial performance data, as well as the requirements for and time required to achieve credentialing and third-party payer contracting following the purchase of a franchise.

**135.** In breach of that duty the Defendants negligently asserted or caused to be asserted multiple false statements, and negligently omitted to disclose material facts, as set forth heretofore.

**136.** The Defendants intended that their statements would be acted on by the plaintiffs. They had knowledge that the plaintiffs would rely on their statements in making the decision to purchase a franchise-license and to plan for, organize and operate the franchise business, and further knew that the statements, if erroneous, would cause plaintiffs to suffer loss or injury.

**137.** Plaintiffs made decisions and took action in reliance on the Defendants' false statements.

**138.** As a direct and proximate result of the Defendants' negligent representations and omissions, plaintiffs suffered financial loss.

**139.** By reason off the foregoing IntelliCell is liable for the damages heretofore claimed and to be proven at trial in an amount to be proven at trial but in an amount no less than $75,000.00.

**140.** By reason off the foregoing IntelliCell is liable for punitive damages in an amount to be awarded by a jury.

**COUNT IV.**

**VIOLATION OF SECTION 10(B) OF THE EXCHANGE ACT [15 U.S.C. § 78J(B)] AND RULE 10B-5 (A),(B)AND (C) THEREUNDER [17 C.F.R. § 240.10B-5] (All Defendants)**

**141.** Plaintiffs Robert Sexauer, Jonathan Schwartz, and Natasha Labban Regenastem, Inc., Cell Innovations Pty Ltd., Allwin Scientific Corporation and PBH Holdings LLC., repeat and incorporate by reference the allegations in Paragraphs **"1"** through **"140"** above as if fully set forth above.

**142.** IntelliCell, **Victor, Rhodes** and **Mazur** by engaging in the conduct described above, directly or indirectly, by use of and the means and/or instrumentality of interstate commerce, and the wire facilities, the facilities of the national securities exchange network and information filings with the SEC in connection with the purchase and/or sale of securities:

(a) with scienter, employed, devices, schemes, or artifices to defraud,

(b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) engaged in acts, practices, or courses of business which operate or would operate as a fraud or deceit upon any person.

**143.**   At all times during the Relevant Period, the **Company** and its Board were required to timely prepare and file accurate 8-K's and/or 10Q's with the SEC for public disclosure of significant events and/or accuracy in the operations of the **Company** and its claimed technology processes and failed to do so.

**144.**   During the Relevant Period, in performance of the scheme to raise capital, induce employee services and in the sale of franchise licenses through the sale and use of IntelliCell's securities, IntelliCell**'s**   with the primary/secondary assistance of **Victor, Rhodes** and **Mazur** commencing July 2011 and thereafter including November 19, 2011  and again on March 30, 2012, intentionally withheld information and notified the SEC and presented in its public  filings that it was delaying its filings of the **Company's** Form 1 OQ, without disclosing the foregoing FDA warnings - findings wherein the reasons published were knowingly false and otherwise misleading by omission in furtherance of the **Victor, Rhodes** and **Mazur** primary support of

the intended fraudulent activity designed to allow the **Company** to continue to maintain employees and otherwise sell Franchise-Licenses without timely disclosing the warnings-findings-restrictions of the employees, Franchises-Licensees and the FDA

**145.**   That in the performance of the frauds aforesaid, IntelliCell's Board as well as the individuals **Victor, Rhodes** and **Mazur** intentionally failed to do so in violation of l0(b) and 20(a) of the Exchange Act of the Securities Exchange Act of 1934, 15 U.S.C. §78j(b) (the "Exchange Act"), and SEC Rule I 0b-5, 17 C.P.R. § 240. l0b-5, promulgated thereunder.

**146.**   By reason and as a result of the primary and/or secondary acts of **Victor, Rhodes** and **Mazur**, in the filing omissions IntelliCell's common stock traded at artificially inflated prices creating a false sense of worth in the value of the **Company's** stock such that employees Labban, Sexauer, former employee Schwartz and the Franchise-Licensees Regenastem, Inc., Cell Innovations    Pty    Ltd.,    Allwin    Scientific Corporation and PBH Holdings LLC relied on the value as believed set in the market in entering into agreements with IntelliCell and in accepting securities as compensation for their services or payment.

**147.**   However, after these revelations were disclosed to the public, the **Company's** stock price plummeted nearly 97% from their performance

hindering the **Company's** ability to raise capital for continued research so as to become compliant with the FDA's review process and otherwise fulfill the **Company's** contractual obligations with Plaintiffs.

**148.** But for the primary act and/or omissions of IntelliCell **Victor, Rhodes** and **Mazur** and/or the Board and its Officers to disclose the true facts and otherwise by the omission of material facts, the aforesaid group of employees shareholder-licensees would not have provided employee services, purchased shares or entered into Franchise Purchase Agreements.

**149.** By reason of the foregoing, Defendants have caused injury to Plaintiffs in the property and value of their IntelliCell shares and has by such conduct violated Section 10(b) of the Exchange Act and Rule 10b-5 (a), (b) and (c) thereunder.

**150.** By reason of the foregoing Plaintiffs have sustained a loss in the value of his IntelliCell Securities.

**151.** By reason off the foregoing IntelliCell is liable for the damages heretofore claimed and to be proven at trial in an amount to be proven at trial but in an amount no less than $75,000.00.

**152.** By reason off the foregoing IntelliCell is liable for punitive damages in an amount to be awarded by a jury.

## COUNT V.

## NEGLIGENCE OF THE OFFICERS OF INTELLICELL AND/OR THE CLAIMS OF NEGLIGENCE AS TO EACH INDIVIDUAL DEFENDANT

**153.** Plaintiffs Robert Sexauer, Jonathan Schwartz, and Natasha Labban Regenastem, Inc., Cell Innovations Pty Ltd., Allwin Scientific Corporation and PBH Holdings LLC., repeat and incorporate by reference the allegations in Paragraphs **"1"** through **"152"** above as if fully set forth above.

**154.** By reason of their positions as officers and/or directors of the **Company,** and because of their ability to control the business and corporate affairs of the **Company,** the Individual Defendants owed the Plaintiffs a duty of care to act reasonably and were required to use their utmost ability when interacting with the Plaintiffs and to act in a fair, just, honest, and equitable manner.

**155.** The Individual Defendants were, and are, required to act using due care in their dealing with the Plaintiffs and failed to do so by reason of the foregoing.

**156.** By reason off the foregoing IntelliCell is liable for the damages heretofore claimed and to be proven at trial in an amount to be proven at trial but in an amount no less than $75,000.00.

Page 43

## COUNT VI.

### TORTIOUS INTERFERENCE WITH A CONTRACT
#### (Victor, Rhodes and Mazur)

**157.** Plaintiffs Robert   Sexauer, Jonathan Schwartz, and Natasha Labban Regenastem, Inc., Cell Innovations Pty Ltd., Allwin Scientific Corporation and PBH Holdings LLC., repeat and incorporate by reference the allegations in Paragraphs **"1"** through **"156"** above as if fully set forth above.

**158.** Binding contracts existed between the Plaintiffs Robert Sexauer, Jonathan Schwartz, Natasha Labban and Defendant IntelliCell at all relevant time herein.

**159.** Defendants **Victor, Rhodes** and **Mazur** knew of the existence of these contracts.

**160.** Defendants **Victor, Rhodes** and **Mazur** intentionally and, with malice towards Plaintiffs, Robert Sexauer, Jonathan Schwartz, and Natasha   Labban induced Defendant IntelliCell, to breach their contractual obligations to these Plaintiffs.

**161.** As a result of the breach, Plaintiffs Robert   Sexauer, Jonathan Schwartz, and Natasha Labban have incurred damages, which include, but are not limited to, pecuniary loss and the loss of opportunities to make substantial profits from their contract.

**162.** Defendants **Victor, Rhodes** and **Mazur** are therefore jointly and severally liable for the tort of tortuous interference with a contract in an amount to be proven at trial but in an amount no less than $75,000.00.

**163.** By reason of the foregoing, Defendants **Victor, Rhodes** and **Mazur** are also liable for punitive damages.

### COUNT VII.

### BREACH OF CONTRACT
(Against IntelliCell)

**164.** Plaintiffs Robert   Sexauer, Jonathan Schwartz, and Natasha Labban Regenastem, Inc., Cell Innovations Pty Ltd., Allwin   Scientific Corporation and PBH Holdings LLC., repeat and incorporate by reference the allegations in Paragraphs **"1"** through **"163"** above  as if fully set forth above.

**165.** Plaintiffs Robert  Sexauer, Jonathan Schwartz, Natasha   Labban, Regenastem, Inc.,  Cell Innovations   Pty   Ltd.,   Allwin   Scientific Corporation and PBH Holdings LLC., entered into binding agreements with Defendant IntelliCell.

**166.** The agreements were supported by valuable consideration.

**167.** Defendant IntelliCell intentionally breached this agreement or otherwise breached the agreement in a reckless, negligent or careless manner.

**168.** By reason of the foregoing breach of contacts, Plaintiffs Robert Sexauer, Jonathan Schwartz, Natasha Labban, Regenastem, Inc., Cell Innovations Pty Ltd., Allwin Scientific Corporation and PBH Holdings LLC., have sustained damages, which include, but are not limited to, pecuniary loss and the loss of opportunities to make substantial profits from the contract in an amount to be proven at trial but in an amount no less than $75,000.00.

**169.** By reason of the foregoing, Defendants **Victor, Rhodes** and **Mazur** are also liable for punitive damages.

### COUNT VIII.
### CONVERSION
### (Against All Defendants)

**170.** Plaintiffs Robert Sexauer, Jonathan Schwartz, and Natasha Labban Regenastem, Inc., Cell Innovations Pty Ltd., Allwin Scientific Corporation and PBH Holdings LLC., repeat and incorporate by reference the allegations in Paragraphs **"1"** through **"169"** above as if fully set forth above.

**171.** At all relevant times, Plaintiffs were and continue to be the owed property in the form of wages, IntelliCell shares and Franchise-License fees.

**172.** Defendants, by their wrongful acts, conspired to illegally take, and did illegally take their property which was rightfully owned by Plaintiffs and convert such property for their own use and benefit.

Page 46

**173.** By reason of the foregoing theft/conversion of Plaintiff property, Plaintiffs Robert Sexauer, Jonathan Schwartz, Natasha Labban, Regenastem, Inc., Cell Innovations Pty Ltd., Allwin Scientific Corporation and PBH Holdings LLC., have sustained damages, which include, but are not limited to, pecuniary loss and the loss of opportunities to make substantial profits from the contract in an amount to be proven at trial but in an amount no less than $75,000.00.

**174.** By reason of the foregoing, Defendants **Victor, Rhodes** and **Mazur** are also liable for punitive damages.

### COUNT IX.
### DECLARATORY JUDGMENT
(Against IntelliCell)

**175.** Plaintiffs Robert Sexauer, Jonathan Schwartz, and Natasha Labban Regenastem, Inc., Cell Innovations Pty Ltd., Allwin Scientific Corporation and PBH Holdings LLC., repeat and incorporate by reference the allegations in Paragraphs "1" through "174" above as if fully set forth above.

**176.** An actual and justiciable controversy presently exists between Plaintiffs and Defendants regarding shares issued and Plaintiff ability to transfer the shares.

Page 47

**177.** Despite their promise to do so, and their lawful obligation Defendant IntelliCell has refused to issue Plaintiffs transferable share

**178.** This Court should adjudge that under the terms of the Plaintiffs Agreements, each have been denied their right of stock transfer of their IntelliCell shares and are entitled to the equivalent value on the date when said were first eligible for trade an direct payment for that sum.

## COUNT X.
## UNJUST ENRICHMENT
### (Against the IntelliCell)

**179.** Plaintiffs Robert  Sexauer, Jonathan Schwartz, and Natasha Labban Regenastem, Inc., Cell Innovations Pty Ltd., Allwin  Scientific Corporation and PBH Holdings LLC., repeat and incorporate by reference the allegations in Paragraphs **"1"** through **"178"** above  as if fully set forth above.

**180.** IntelliCell by the improper use of employees unpaid wages and benefits and franchisee licensees fees with the Defendant's appreciation of the benefit related to those services-unpaid wages and investments; Defendant IntelliCell has acceptance and retained the benefit provided by these Plaintiffs under circumstances that make it inequitable for the **Company** to do so without paying the value of their use.

**181.** By the reasons alleged in the details above, there exists a direct and proximate result of the **Company's** improper use and retention of employees' wages and franchise licensing fees paid where the **Company** has caused each to suffer significant damages as alleged heretofore.

## COUNT XI.

### ACCOUNTING
### (Against the IntelliCell)

**182.** Plaintiffs Robert   Sexauer, Jonathan Schwartz, and Natasha Labban Regenastem, Inc., Cell Innovations Pty Ltd., Allwin   Scientific Corporation and PBH Holdings LLC., repeat and incorporate by reference the allegations in Paragraphs **"1"** through **"181"** above  as if fully set forth above.

**183.** Defendants should be required to account to Plaintiffs for any and all moneys retained or otherwise obtained by IntelliCell which were rightfully the property of the Plaintiffs any and all fees paid to Defendants for their faithless and conflicted service.

**184.** By reason of the foregoing breach of contacts, Plaintiffs Robert Sexauer, Jonathan Schwartz, Natasha  Labban,   Regenastem,  Inc., Cell Innovations  Pty  Ltd.,   Allwin Scientific Corporation and PBH Holdings LLC., have sustained damages, as to payments and/or deductions paid in an amount to be proven at trial but in an amount no less than $75,000.00.

**185.** By reason of the foregoing, Defendant IntelliCell is liable for punitive damages.

**PRAYER FOR RELIEF**

**WHEREFORE,** the Plaintiffs respectfully request that this Court enter an order-and judgment on Counts "I" through "XI" above:

- Against all of the Defendants and in favor of the Plaintiffs for the amount of damages established at trial on behalf of each Plaintiff directing the Individual Defendants be jointly and severally liable and required to indemnify for all losses, sustained by the Plaintiffs as a result of the Individual Defendants' breaches of fiduciary duties; and

- Ordering the Defendant IntelliCell to disgorge to the Plaintiffs all of the funds, assets-benefits they received, including the proceeds of any contractual agreement between them and; and

- Granting appropriate equitable relief to remedy Defendants' breaches of fiduciary including upon an accounting with the a declaration as and for the ownership and value of the IntelliCell shares as of the date issued or otherwise tradable; and

- Awarding to Plaintiffs the costs and disbursements of this action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

- Granting such other and further relief as the Court deems just and proper.

Dated: March 23, 2015
         White Plains, New York

_____
DOUGLAS R. DOLLINGER,, ESQ. (5922)
Attorney Plaintiff Representative

Complaint For Direct Shareholder(s), Employee(s) and Licensee(s) Claims
Against IntelliCell Bio Science, Steven Victor, Anna Rhodes and Leonard Mazur

50 Main Street-Suite 1000
White Plains, New York 10606
Tel. 845.915.6800
Fax. 845.915.6801
ddollingeresq@gmail.com

**Complaint For Direct Shareholder(s), Employee(s) and Licensee(s) Claims**
**Against IntelliCell Bio Science, Steven Victor, Anna Rhodes and Leonard Mazur**

## ATTORNEY VERIFICATION

State of New York    )
                     ) SS.:
County of Westchester )

DOUGLAS R. DOLLINGER, an attorney duly admitted to practice And as the attorney of record in this action affirms making this Verification and says, that deponent that deponent has read the foregoing Pleading and knows the contents hereof; that the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged upon information and belief, and that as to those matters deponent believes them to be true, the source of which said knowledge are the books and records provided to me in this matter and by the Plaintiffs and conversations with Plaintiffs.

That the reason the undersigned makes this verification is that the Plaintiffs reside in a County other than the County where your deponent maintains his practice-office.

Affirmed this 23rd
day of March 2015                    _____
                                     DOUGLAS R. DOLLINGER, ESQ.

Page 52

**Complaint For Direct Shareholder(s), Employee(s) and Licensee(s) Claims
Against IntelliCell Bio Science, Steven Victor, Anna Rhodes and Leonard Mazur**